IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **LINDA O'NEAL**, on behalf of herself | : | Case No. 1:13-cv-22 |
| and others similarly situated, | : | |
| | : | Chief Judge Susan J. Dlott |
| Plaintiff, | : | |
| | : | ORDER DENYING DEFENDANTS' |
| v. | : | MOTION TO STRIKE and DENYING |
| | : | PLAINTIFF'S MOTION FOR |
| **EMERY FEDERAL CREDIT UNION,** *et al.,* | : | CONDITIONAL CERTIFICATION |
| | : | |
| Defendants. | : | |

Plaintiff Linda O'Neal brings this action on behalf of herself and all others similarly

situated against Defendants Emery Federal Credit Union and Emery Financial Services, Inc. for

damages and other relief relating to alleged violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §201, *et seq.*  Plaintiff moves the Court to conditionally certify a plaintiff

class pursuant to 29 U.S.C. §216(b) consisting of all employees who performed as loan officers

for Defendants from three years from the date of an order granting her motion.  Doc. 13.

Defendants oppose certification of a conditional class and additionally move to strike portions of

the sworn statements submitted by Plaintiff in support of her motion for conditional certification.

Doc. 22.

For the following reasons, both motions are hereby DENIED.

## I.  BACKGROUND

Plaintiff Linda O'Neal was employed by Defendant Emery Federal Credit Union

(hereinafter "Emery") as a loan officer for approximately one year, from January to December

2012.  As an Emery loan officer, O'Neal's primary duty was to sell mortgage loan products.

1

O'Neal performed her work obligations from her home in Florida. O'Neal signed a Loan Officer Agreement with Emery that set forth her employment terms, including compensation.

O'Neal claims in her Complaint that Defendants violated overtime compensation and minimum wage requirements of the FLSA and Ohio law during the time she was employed as an Emery loan officer. She claims that Defendants classify her and all its loan officers as exempt from overtime premium compensations, and she alleges that Defendants "suffered and permitted" her and all other loan officers to work more than forty hours per week to complete their job responsibilities but did not pay them overtime compensation. She also alleges that Defendants paid their loan officers for no more than twenty hours per week at the state's minimum wage, even if they worked more than twenty hours. In her motion for conditional certification, O'Neal argues that Defendants subjected all its loan officers to this same pay policy and, accordingly, all current and former loan officers employed by Defendants are similarly situated for the purposes of this FLSA collective action.

O'Neal supports her motion for conditional certification with three sworn statements: her own and those of opt-in Plaintiffs Tim Mulvehill and Dan Mulvehill. The Mulvehills worked on-and-off for Emery as loan officers from 2009 to August 2012. Docs. 14-1 (O'Neal), 14-2 (T. Mulvehill), and 14-3 (D. Mulvehill). Tim Mulvehill worked for Emery out of an office location and also out of his home in Seattle, Washington; Dan Mulvehill worked for Emery out of his home in Seattle.

These three former Emery loan officers state that they "always" (O'Neal) or "usually" (T. and D. Mulvehill) worked in excess of forty hours per week but were not paid any premium for hours worked in excess of forty hours per week. Emery did not require them to record or report

2

the number of hours they worked and, to their knowledge, Emery classified all its loan officers as exempt from overtime pay requirements.

All three Plaintiffs swear in their statements that they were never compensated at the minimum wage for time worked over twenty hours per week and that this was consistent with Emery's pay plan for *all* its loan officers.  (All Pl. Stmts. ¶¶ 5, 8; O'Neal and Dan Mulvehill Stmts. ¶3.)  Despite this assertion, Tim Mulvehill states that under *his* compensation plan, Emery paid him no more than thirty hours per week at minimum wage.  (Tim Mulvehill Stmt. ¶ 3.)

Plaintiffs assert that all loan officers working for Defendants had to execute the same or similar employment agreement.  However, none of the three Plaintiffs had the same employment contract with Emery.  O'Neal signed a Loan Officer Agreement with Emery that did not specify whether she was a part-time or full-time employee, and it guaranteed her compensation in the amount of twenty hours per week at minimum wage if her earned commission was less than that amount.[1]  Tim Mulvehill signed a Loan Officer Agreement with Emery that specified he was being hired as a full-time employee and, as such, was guaranteed compensation in the amount of

---

[1]  O'Neal's written loan officer employment agreement with Emery provided the following with respect to compensation:

> In any month in which the Loan Officer shall earn a commission in an amount in the aggregate which is less than his/her State of Domicile's minimum hourly wage times 20 hours per week, Loan Officer will be paid the minimum wage less commission received and his/her employment status shall be subject to review or termination for lack of production.

O'Neal Agreement ¶6.1.1, Doc. 14-1 at Page ID 70–71.

thirty hours per week at minimum wage if his earned commission was less than that amount.[2]
Dan Mulvehill never signed a Loan Officer Agreement with Emery.

Defendants responded to Plaintiff's Motion for Conditional Certification by filing an opposition memorandum and the declarations of nine employees: the vice president of Emery's Mortgage Division, four team managers, and four loan officers or loan originators (the terms are used interchangeably by Emery). According to Todd Cain, Mortgage Division Vice President, Emery Federal Credit Union employs approximately 376 loan officers in thirty-five states.[3] Loan officers are members of teams led by one of approximately sixty-one team managers employed by Emery. Cain states that all team managers are independently responsible for the

---

[2] Tim Mulvehill's employment agreement provided, in relevant part, the following with respect to compensation:

> In any month in which the Loan Officer shall earn a commission in an amount in the aggregate which is less than his/her State of Domicile's minimum hourly wage times (select one)
>
> ____20 hours (PART TIME EMPLOYEE)
>
> OR
>
> ____30 hours per week (FULL TIME EMPLOYEE)
>
> Loan Officer will be paid the minimum wage less commission received and his/her employment status shall be subject to review or termination for lack of production.

T. Mulvehill Agreement ¶ 6.1.1, Doc. 14-2 at Page ID 84. Tim Mulvehill initialed the second of the two blanks, thereby indicating that he would be a full-time employee compensated for thirty hours per week at minimum wage if his commission was less than that amount.

[3] Cain declares that Emery Financial Services, Inc., does not employ any loan officers. Only Emery Federal Credit Union employs loan officers. Cain Decl. ¶ 6, Doc. 23-2, at Page ID 142.

operation of their respective teams and the loan officers they supervise, including setting hours of work (which vary between twenty and forty hours per week), the methods for recording and verifying hours worked, working arrangements (such as working from home or an office), and, within certain parameters, how the loan officers are compensated. Cain Decl. ¶ 8, Doc. 23-2. According to Cain, Emery classifies loan officers as non-exempt from overtime compensation requirements.

The declarations provided by Emery team managers and loan officers support Cain's assertion that Emery loan officers' hours, compensation, and timekeeping requirements are not uniform. Of the team managers to provide declarations, two have part-time and full-time loan officers on their teams (Michael Drapeau and Forrest Layton); one has only part-time loan officers (Asif Mazhar); and one does not specify whether her loan officers are part-time or full-time (Julia Galbraith).

Michael Drapeau requires the loan officers on his team to record their time worked on time sheets, and he prohibits them from working more than the number of hours they agreed to work (twenty to thirty hours per week for part-time employees, forty hours per week for full-time employees). Drapeau Decl., Doc. 23-3. All the loan officers on his team are paid commission on the loans they close. If Drapeau's loan officers close only one loan during a two-week pay period, the amount they are paid exceeds the amount they would receive if they were paid minimum wage for the hours they worked. If a loan officer on his team does not close at least one loan during the pay period, he or she is paid California's minimum wage for whatever hours he or she worked during the pay period.

5

The loan originators on Forrest Layton's team all work twenty or fewer hours each week regardless whether they are characterized as part-time or full-time.  Layton Decl., Doc. 23-8.  If a loan originator reporting to Layton sells no loans during a two-week pay period, he or she will be paid California's minimum wage for forty hours of work.  Layton's loan originators very rarely fail to sell at least one loan during a pay period.

Asif Mazhar manages four loan originators and one loan processor on his team in Tustin, California.  Mazhar Decl., Doc. 23-9.  All his loan originators work part-time, and all work in an office.  Mazhar keeps track of the hours that the employees on his team work, and he gives the time sheets to the employees for their review, correction (if necessary), and signature.  The loan officers are paid an amount each bi-weekly pay period based on the California minimum wage for forty hours of work or the amount they earned in commission that period, whichever is higher.

The loan originators on Julia Galbraith's team in South Jordan, Utah, work a maximum of twenty or thirty hours per week.  Galbraith Decl., Doc. 23-6.  Approximately half of her team work from home.  If a loan originator does not close at least one loan in a two-week pay period, he or she is paid Utah's minimum wage for whatever hours the employee worked during that period.  At the end of a two-week pay period, Galbraith contacts any loan originator on her team who does not have any commissions for that period and asks him or her how many hours they worked.  Galbraith completes a time sheet based on what the loan originator tells her, and the loan originator makes any needed changes.  Galbraith instructs all her employees that they generally are not permitted to work more than the number of hours they agreed they would work when they were hired and that they must ask for authorization if they are going to work more

than their agreed hours.  No employee on Galbraith's team has ever asked to work more than their assigned hours for the week.

Each of these four team managers stated in their declarations that they and the members of their teams have little, if any, interaction with members of other teams; have no information about how loan officers/loan originators on other teams are compensated or how many hours they work; and have no opportunity or reason to observe the work of other loan officers/loan originators.

Of the four loan originators/loan officers to provide declarations in support of Defendants' opposition to conditional certification, two work in California and two work in Utah.  Anthony Bitmayl works as a loan originator in California.  Bitmayl Decl., Doc. 23-1.  When he was hired, Bitmayl's team manager instructed him that he was not to work more than his assigned number of hours each week, and Bitmayl does not work more than thirty hours per week.  He keeps track of the number of hours he works each day and, at the end of every two-week period, signs the time sheet and gives it to his team manager.  During a two-week period in which he does not close a loan, Bitmayl is paid $8.00 an hour for every hour recorded on his time sheet.  When he does close a loan during the pay period, his commission is greater than if he were paid $8.00 an hour for his hours worked.  Satina Gulati also works as a loan originator in California.  The information in her declaration is identical to that in Bitmayl's declaration.  Gluati Decl., Doc. 23-7.

Derrick Frazier works as a loan originator in Utah.  When he was hired, his team manager instructed him that he should not work more than his assigned number of hours each week.  Frazier Decl., Doc. 23-4.  If he wants to work more than his assigned hours, he first must

ask for advance authorization from his team manager. Frazier does not work more than thirty

hours each week. If Frazier does not earn any commissions during a pay period, he reports the

number of hours he worked to his team manager who notes Frazier's time on a time sheet.

Frazier reviews the time sheet for accuracy, makes any needed changes, and returns it to his team

manager. During a two-week period in which he does not close a loan, Frazier is paid $7.25 an

hour for every hour he reported working during the time period. If he closes at least one loan in

a pay period, the commission he receives exceeds what he would receive if he were paid $7.25

an hour for all hours he worked during that period. Brett Fuller also works as a loan originator in

Utah. The information in Fuller's declaration is identical to that in Frazier's declaration. Fuller

Decl., Doc. 23-5.

## II. ANALYSIS

### A. Right of Action under the FLSA

The FLSA requires that all hours worked must be compensated. *See Tennessee Coal,*

*Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) ("Congress enacted the

FLSA to guarantee either regular or overtime compensation for all actual work or

employment."); *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002) ("The FLSA

requires employers to pay at least a specified minimum wage for each hour worked, *see* 29

U.S.C. § 206."). The FLSA also requires covered employers to pay overtime wages to

employees who work more than forty hours per week unless the employees fall into the category

of exempted employees.[4] *See* 29 U.S.C. §§ 207(a)(1) and 213(a).

---

[4] Individuals "employed in a bona fide executive, administrative, or professional
capacity" are exempt from the FLSA's overtime pay requirement. 29 U.S.C. §213(a)(1).

> Congress enacted the [FLSA] . . . "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work," *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 460, 68 S. Ct. 1186, 92 L. Ed. 1502 (1948). "Consistent with this goal, the Act requires employers to pay their employees time-and-a-half for work performed in excess of forty hours per week." *Acs v. Detroit Edison Co.*, 444 F.3d 763, 764–65 (6th Cir. 2006) (internal quotation marks omitted).

*Wood v. Mid-America Management Corp.,* 192 F. App'x 378, 379-380 (6th Cir. 2006). The statute provides affected employees with a private right of action to recover their unpaid compensation. 29 U.S.C. § 216(b). Similarly situated employees collectively may recover compensation from their employer under the FLSA in opt-in, class-action litigation. 29 U.S.C. § 216(b); s*ee also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). An employee may become a party plaintiff in a collective class action if he consents, in a writing filed with the Court, to become a party. *Id.*

### B. Collective Class Certification Standard

The FLSA does not prescribe a procedure for instituting and managing a collective action against an employer. However, courts generally employ a two-tiered certification approach for deciding whether a suit can proceed as a collective action. *Baptist Mem'l*, 699 F.3d at 877; *Comer*, 454 F.3d at 546; *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583–85 (6th Cir. 2009).

First, in what is referred to as the "initial notice" stage, the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *White v. MPW Indus. Servs. Inc.*, 236 F.R.D. 363, 366 (E.D. Tenn. 2006). The Court will authorize such notice if the plaintiff demonstrates that she is "similarly

situated" to the employees she seeks to notify of the pendency of the action.  Because the court has minimal evidence at this stage, which generally occurs prior to discovery, the determination is made using a "fairly lenient standard" that "typically results in conditional certification of a representative class."  *Baptist Mem'l*, 699 F.3d at 877 (citing *Comer*, 454 F.3d at 547); *see also O'Brien*, 575 F.3d at 584.

Due to the lenient standard at the initial notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues when deciding whether to conditionally certify a class.  *See, e.g., Beetler v. Trans-Foam, Inc.*, No. 5:11-cv-132, 2011 WL 6130805, at *3 (N.D. Ohio Dec. 8, 2011); *Burdine v. Covidien, Inc.*, No. 1:10-cv-194, 2011 WL 2976929, at *2–4 (E.D. Tenn. June 22, 2011); *Seger v. BRG Realty, LLC*, No. 1:10-cv-434, 2011 WL 2020722, at *3 (S.D. Ohio May 24, 2011).  However, "[w]hile the required level of proof is minimal and lenient at the first stage, the court should exercise caution in granting conditional certification, because the Sixth Circuit Appellate Court has held 'that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable.'" *Snide v. Discount Drug Mart, Inc.*, No. 1:11-cv-244, 2011 WL 5434016, at *4 (N.D. Ohio Oct. 7, 2011) (quoting *Albright v. Gen. Die Casters, Inc.*, 2010 WL 6121689, at *1 (N.D. Ohio July 14, 2010)).  Once an action is conditionally certified, notice is provided to the putative collective class members and discovery proceeds.

At the second stage of the proceedings, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiff's claims.  At that stage, "district courts apply a 'stricter standard' and more closely examine 'the question of

whether particular members of the class are, in fact, similarly situated.'" *Baptist Mem'l*, 699 F.3d at 877 (quoting *Comer*, 454 F.3d at 547).

Plaintiff's motion concerns the first of these two tiers of the collective action standard: conditional certification. She seeks to certify a class defined as all current and former loan officers working for Defendants from the date three years from the date the Court enters this order to the present. To succeed, she must "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists" for the purposes of this action. *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (quoting *Severtson v. Philips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991)). Plaintiff can show she and potential class members are similarly situated by showing that "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. Plaintiff also may establish the similarly situated requirement by showing that she and the potential class members "suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation to all plaintiffs." *Id.*

### C. Motion to Strike

As a precursor to a discussion of the evidence, the Court will address Defendants' motion to strike portions of the statements filed in support of Plaintiff's conditional certification motion. Defendants' motion addresses the portions of Plaintiffs' statements concerning the employment practices and/or employment agreements of other Emery loan officers — assertions made on Plaintiffs' "knowledge," "understanding," or "experience and observation" but lacking in specific supporting facts. For example, Plaintiffs claim to know the following:

- that all loan officers working for Emery "always" (O'Neal) or "usually" (T. Mulvehill and D. Mulvehill) work more than forty hours per work week,

- that all Emery loan officers are classified as exempt from overtime pay requirements and are denied overtime pay,

- that Emery pays all its loan officers no more than twenty hours per week under its pay plan,[5]

- that all loan officers are not required to record or report their hours worked, and

- that all loan officers working for Emery sign the same or similar employment agreement.[6]

Plaintiffs do not explain the source of this alleged knowledge or the circumstances giving rise to their belief that the statements are true as to all loan officers employed by Defendants.

Relying on *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005), and *Landsberg v. Acton Enters.*, 2006 WL 3742221, at *4 (S.D. Ohio Dec. 15, 2006), Defendants assert that this Court is limited to considering admissible evidence only in connection with a § 216(b) motion for conditional certification. Federal Rule of Evidence 602 requires a witness to have personal knowledge of any matter about which he testifies. Defendants argue that because Plaintiffs do not have personal knowledge of other Emery loan officers' employment details or

---

[5] Despite Plaintiffs' assertions that Defendants pay loan officers no more than twenty hours per week, Tim Mulvehill states that under *his* compensation plan, Emery paid him up to thirty hours per week at minimum wage. T. Mulvehill Stmt. ¶ 3.

[6] Although O'Neal and Tim Mulvehill state that it was their "understanding" that "all loan officers working for Emery had to execute the same or similar agreement," Dan Mulvehill did not sign a Loan Officer Agreement with Emery.

compensation, this Court may not consider any statements in the Plaintiffs' statements regarding other loan officers.

Upon examination, the Court finds that the decisions in *Harrison* and *Landberg* are not as relevant as other case law on this topic. Both the *Harrison* and *Landberg* courts struck portions of plaintiffs' statements in support of their motions for conditional certification because they were hearsay. *Harrison*, 411 F. Supp. 2d at 866-67 (striking portions of plaintiffs' affidavits stating they had heard other employees complain to management about pay shortages); *Landberg*, 2006 WL 3742221, at *5 (excluding portions of plaintiff's statement concerning comments he heard other store managers make during dinner). Defendants in this case do not contend that Plaintiffs' sworn statements contain inadmissible hearsay. Rather, they dispute the extent of Plaintiffs' personal knowledge regarding the compensation and practices of other Emery loan officers.

Plaintiffs' statements in this case regarding other Emery loan officers are based on their "knowledge and understanding" of Defendants' employment practices. Several courts to consider similar statements in support of certification motions under 29 U.S.C. § 216 have refused to strike them. For example, in *Carter v. Jackson-Madison Cnty. Hosp.*, No. 1:10-cv-1155, 2011 WL 1256625, at * 17 (W.D. Tenn., March 31, 2011), the court found that the plaintiff's statements about her employers' "unified policy" and the hours worked by other employees were admissible evidence based on the plaintiff's personal knowledge. *Id.* (citing *MPW Indus. Servs., Inc.*, 236 F.R.D. at 369 ("[I]t is reasonable to infer from the evidence submitted that [plaintiffs], as employees of [defendant], would have learned during the normal course of their employment how the company operates and what the company's policies were.");

13

*see also Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009) (finding, where declarants stated that they "got to know several other" employees working in the same capacity, that it was "reasonable to infer" that the declarants would have talked to these other employees about their pay structures and hours worked and thus could have personal knowledge regarding those subjects). Under this reasoning, a plaintiff's statements regarding her employer's employment practices are made from personal knowledge and are thus admissible under Evidence Rule 602 if the plaintiff has gotten to know fellow employees, observed them during the course of their employment, and talked with them about employment practices governing their work.

Alternatively, some courts have assumed that plaintiffs' statements describing the experience of co-workers are inadmissible but consider them nonetheless, finding that "the better approach is to consider those averments in the first stage of a collective action proceeding," particularly when no discovery has taken place. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246–47 (W.D. Mich. 2011); *see also Carter v. Indiana State Fair Comm'n*, No. 1:11-cv-852, 2012 WL 4481350, at * 3 (S.D. Ind., July 17, 2012) ("[T]he inadmissible statements contained in Plaintiffs' affidavits should be considered in the overall calculus of whether Plaintiffs can make a modest showing.").

Plaintiffs in this case do not provide a factual basis sufficient to demonstrate that they "got to know" other Emery loan officers. Thus, their statements regarding other Emery loan officers likely are not admissible under Rule of Evidence 602. Nonetheless, the Court will consider them for the purposes of evaluating Plaintiffs' motion for conditional certification. Unlike in *Harrison*, no discovery has taken place in this case, and Plaintiffs' counsel say they do

14

not have access to contact information for other potential plaintiffs from whom to solicit statements. *See Harrison*, 411 F. Supp. 2d at 870 (striking hearsay statements from plaintiff's affidavit when plaintiff had access to contact information for approximately 300 potential class members).[7]

However, because Plaintiffs' statements in this case do not establish the basis of their knowledge about other employees' experiences, these portions of the statements are entitled to little or no weight. The appropriate method for handling these infirmities is to disregard them in inquiring whether Plaintiffs and the absent potential class members are similarly situated. *See Mathews v. ALC Partner, Inc.*, No. 2:08-cv-10636, 2009 WL 2591497, at *4 -5 (E.D. Mich. Aug. 24, 2009) (denying motion to strike but disregarding portions of the plaintiffs' declarations because plaintiffs did not establish the basis for their knowledge). Accordingly, Defendant's motion to strike is DENIED.

### D. Conditional Certification — Similarly Situated Plaintiffs

To be granted conditional certification of her proposed class, Plaintiff must provide evidence sufficient to support an inference that her claims and those of other Emery loan officers are "unified by common theories of defendant's statutory violations" or that she and potential class members "suffer from a single, FLSA-violating policy." *O'Brien*, 575 F.3d at 583.

---

[7] Defendants argue that this Court is bound by the language in *Harrison* stating that only admissible evidence may be considered in connection with a § 216(b) motion. The Court disagrees. First, *Harrison* is factually distinguishable as discovery had taken place in that case. Second, contrary to Defendants' assertion, the doctrine of stare decisis does not compel one district court judge to follow a decision of another. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991); *see also Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987); *Starbuck v. City and Cnty. of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977); and *Hasan v. Ishee*, No. 1:03-cv-288, 2010 WL 6764154, at *7 (S.D. Ohio Dec. 29, 2010) (citing cases).

Plaintiff's theories of Defendants' statutory violations are that (1) Defendants "suffered and permitted" all its loan officers to work more than forty hours per week to complete their job responsibilities but did not pay them overtime compensation because they classified loan officers as exempt from overtime premium compensation, and (2) Defendants paid their loan officers for no more than twenty hours per week at the state's minimum wage, even if they worked more than twenty hours.

While the evidentiary threshold for demonstrating that similarly situated employees exist is not high, a plaintiff must demonstrate a factual nexus — that is, something more than mere allegations — to warrant conditional certification and the delivery of notice to potential class members. Allegations in declarations need not be "highly specific," and "it is not necessary for the declarants to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Noble*, 2009 WL 3154252, at *3. However, to warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has *actual knowledge* about other employees job duties, pay structures, hours worked, and whether they were paid for overtime hours. *Id.*

Plaintiffs whose declarations contain facts that support an inference that they have actual knowledge of company-wide employment practices typically succeed in obtaining conditional certification. For example, first-hand observations or conversations with co-workers can be sufficient to meet the lenient standard for demonstrating that a similarly situated class of employees exists. In *Searson v. Concord Mortgage Corp.*, mortgage loan officers adequately supported their claim that they were subject to a uniform, company-wide policy that failed to provide them minimum wage and overtime compensation in violation of the FLSA when they

submitted affidavits of seven loan officers containing information based on their observations of other employees, and when their employment contracts expressly limited compensation to commissions.  *Searson*, No. 07-cv-3909, 2009 WL 3063316, at *5 (E.D.N.Y. Sept. 24, 2009) (granting motion for conditional certification where loan officers stated in their affidavits that they observed other loan officers in their respective branches working from fifty-five to seventy hours per week and that their compensation was limited to commissions with no overtime pay or guaranteed salary); *see also Jesiek*, 275 F.R.D. at 246 (granting motion for conditional certification when plaintiffs averred, based on "first hand observations and conversations with other employees," that travel time to the job site was not included in time worked for the purposes of calculating overtime); *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) (noting that "courts regularly grant conditional certification of collective actions based on employee affidavits . . . identifying similarly situated employees by name"); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (granting conditional certification when each named plaintiff submitted an affidavit specifically naming additional coworkers who discussed with them the fact that they worked in excess of forty hours per week without being paid overtime); *Petersen v. Cleveland Institute of Art*, No. 1:08-cv-1217, 2011 WL 1230267, at *4 (N.D. Ohio March 30, 2011) (granting conditional certification when plaintiff averred that, over a period of three years, he had observed approximately fifteen technical assistants in more than one department working in excess of forty hours per week and working beyond the weeks they were contracted to work).[8]

_____

[8] Notably, when a plaintiff's observations of other employees' activities forms the evidentiary basis for a finding that there are similarly situated employees, courts may limit the collective class to employees at the location where the plaintiff worked.  *See*, *e.g.*, *Snide v.*

Another example of the nature of evidence found to constitute a factually sufficient basis to support conditional certification is found in *Carter v. Jackson-Madison County Hospital District*. No. 1:10-cv-1155, 2011 WL 1256625 (W.D. Tenn. March 31, 2011). In *Carter*, the plaintiff hospital employee supported her certification motion with her affidavit in which she explained that the hospital had a computerized time and attendance system that automatically deducted a thirty-minute meal period per work shift but that she and other hourly employees performed compensable work during those uncompensated meal breaks. *Id.* at \*14. She explained that the workload and staffing at the hospital did not allow for work-free meal breaks; that she and her co-workers were expected to respond to requests from patients, other co-workers, and supervisors during these unpaid meal breaks; and that supervisors were aware that hourly employees were not completely relieved of their work duties during these uncompensated meal breaks. *Id.* at \*15. The court in *Carter* concluded that the "factually detailed complaint, affidavit and consent form of the named plaintiff" and two additional employees were sufficient to make a modest factual showing that she was similarly situated to prospective class members due to the hospital's unified policy regarding uncompensated meal breaks. *Id.* at \*18.

Plaintiff's evidence on the issue of whether she is "similarly situated" to the employees she seeks to notify of the pendency of the action consists of the sworn statements of O'Neal, Tim Mulvehill, and Dan Mulvehill as well as the Loan Officer Agreements executed by O'Neal and

---

*Discount Drug Mart, Inc.*, No. 1:11-cv-244, 2011 WL 5434016, at \*5 (N.D. Ohio Oct. 7, 2011) (granting conditional certification motion based on the plaintiff's averment that she witnessed other hourly employees working "off the clock" but limiting the collective class to employees at the single store location where plaintiff worked); *Beetler v. Trans-Foam, Inc.*, No. 5:11-cv-132, 2011 WL 6130805, at \*4 (N.D. Ohio Dec. 8, 2011) (limiting collective class to full-time laborers at single facility because plaintiff's affidavit describing numerous conversations with former co-workers did not support his claim that the overtime policy extended beyond that facility).

Tim Mulvehill.  The Plaintiffs state that they worked more than forty hours per week but were neither paid overtime nor the minimum hourly wage for hours worked in excess of twenty (or thirty) a week.

The Court does not make credibility determinations at this stage, and it would be improper to accept Defendants' evidence over conflicting evidence from Plaintiffs.  For example, the declarations of Emery team managers stating that they keep track of the hours worked by loan officers and do not permit them to work more than their contracted hours does not prove that Plaintiffs did not work overtime hours for which they were not compensated.  However, these declarations do serve as evidence the alleged FLSA violations suffered by Plaintiffs were not the product of a company-wide policy.  If Plaintiff had provided evidence in support of her allegations that others are similarly situated, any conflicts and reasonable inferences would have to be resolved in her favor at this preliminary stage of conditional certification.  However, Plaintiff has failed to provide support for her allegations that Defendants had pay policies that resulted in the denial of minimum wage and overtime pay to all its loan officers.

None of the three loan officers to submit affidavits in support of Plaintiff's motion for conditional certification in this case attested to personally observing any other loan officer work more than his or her contracted number of hours or more than forty hours per week.  None of the Plaintiffs averred that they spoke to any other Emery loan officer about hours worked or compensation, nor do they claim to have discussed these matters in any way with any other Emery loan officer.  None of the Plaintiffs provide the names of any co-workers who worked hours for which they were not paid.  O'Neal worked from home: there is nothing in her

19

statement to indicate that she spoke to any other loan officers to determine whether her work experience was similar to theirs. The same is true of Dan Mulvehill. Tim Mulvehill worked out of an office location and his home office; nonetheless, he does not state that he spoke to any other loan officer about hours worked or compensation or specifically witnessed any loan officers performing work in excess of the hours they contracted to work.

In short, the statements provided in support of Plaintiff's motion for conditional certification do not include facts from which the Court could draw an inference that other Emery loan officers worked more than their contracted hours or worked more than forty hours a week without being paid overtime compensation. Evidence that Plaintiff herself and the two opt-in Plaintiffs have been deprived of overtime or minimum wage compensation is not sufficient to demonstrate a class of similarly situated employees absent facts from which the Court could draw an inference that they have actual knowledge that their experience was not unique. These three individuals worked separate and apart from other employees performing the same or similar job duties for the employer. Therefore, unlike in cases such as *Carter* and *White* where the plaintiffs worked amongst their peers and could observe their employment experiences, it is not reasonable in this case to "infer" that Plaintiffs would have learned during the normal course of employment how the company operates and what company policies were.

Nor is the Complaint sufficiently detailed with respect to the alleged statutory violation that this Court can infer a uniform policy with respect to uncompensated hours worked by loan officers. Even their small sample size of three belies their claim that Defendants' practice was to pay its loan officers for only twenty hours per week at minimum wage (as Tim Mulvehill was guaranteed payment for thirty hours per week). And Plaintiffs' statements that they believe all

20

loan officers had to sign the same or similar employment agreement with Defendants are belied by the fact that of the three, only two signed Loan Officer Agreements with Emery, and those two Agreements differ with respect to the minimum compensation to be paid at minimum wage.

A district court in New Jersey to examine a motion to conditionally certify an FLSA class based upon unsupported assertions put it this way:

> To make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated. [The plaintiff's] declaration does not provide this. [The plaintiff] makes vague, general statements about "all Loan Officers employed by [the defendant]," but does not define who he is referring to and how he has knowledge of them. This Court cannot determine, from this declaration, whether [the plaintiff] actually knew other particular officers who were required to perform unpaid overtime work, and what he knew specifically about their unpaid work. Conspicuously absent from the declaration is any specific statement about even one particular loan officer known to [the plaintiff] as having been required to perform unpaid overtime work. . . .
>
> Nor does [the plaintiff's] statement provide a basis to generalize to other [of defendant's] offices. . . . [The plaintiff] provides no factual foundation for his statement that all other loan officers were required to work unpaid overtime. This Court has no factual basis to infer that there are loan officers in other offices subject to such requirements.

*Armstrong v. Weichert Realtors*, No. 05-3120, 2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006). Absent some factual showing that similarly situated employees exist or that the defendant's pay practices were consistent, conditional certification is improper. *See*, *e.g.*, *Villanueva-Bazaldua v. TruGreen Limited Partners*, 479 F. Supp. 2d 411, 416 (D. Del. 2007) (denying certification motion where the plaintiff submitted no evidence that other potential class members existed and the defendant submitted evidence that militated against class treatment);

*Boyd v. Alutiiq Global Solns.*, No. 11-cv-753, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011) ("Plaintiffs [did] not identify to whom they spoke, when those conversations occurred, or what specifically was discussed that would lead them to conclude that pay practices were 'consistent.' Nor [was] there any evidence that Plaintiffs' supervisors were acting in accordance with any global plan or that those supervisors had instructed personnel at other bases to shortchange themselves on their time sheets.").

Defendants' evidence demonstrates that its 376 loan officers are managed by one of sixty-one team managers across thirty-five states. These team managers had their own practices with respect to how they kept track of loan officers' hours worked and how they compensated their loan officers. Defendants' evidence that loan officers did not work more than the number of hours they were contracted to work — and that team managers kept track of hours worked in order to ensure this — does not diminish Plaintiffs' statements to the contrary. However, given that Plaintiffs have no evidence other than their own limited experience with respect to hours worked and compensation paid, there is not enough information to support a finding that Defendants have a company-wide policy of violating the FLSA.

Despite the fact that she need make only a "modest factual showing" to satisfy the "similarly situated" requirement of § 216(b) at the conditional certification phase, *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006), Plaintiff in this case has not done so: she has not met her standard of proof that her FLSA claim is not individual to her and the two loan officers to opt into the suit thus far. Because Plaintiff has not made the showing required for conditional class certification under 29 U.S.C. § 216(b), the Court need not consider Plaintiff's proposed notice to collective class members.

22

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Certification (Doc. 13) is

DENIED.  Additionally, Defendants' Motion to Strike (Doc. 22) is DENIED.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court