IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **LINDA O'NEAL**, on behalf of herself and others similarly situated, | : : | Case No. 1:13-cv-0022 |
| | : | Chief Judge Susan J. Dlott |
| Plaintiff, | : : | ORDER GRANTING IN PART |
| v. | : : | PLAINTIFF'S SECOND MOTION FOR CONDITIONAL |
| **EMERY FEDERAL CREDIT UNION**, *et al.*, | : : | CERTIFICATION AND JUDICIAL NOTICE |
| Defendants. | : : | |

Plaintiff Linda O'Neal brings this action on behalf of herself and all others similarly situated against Defendants Emery Federal Credit Union and Emery Financial Services, Inc. (collectively, "Emery") for damages and other relief relating to alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*.  O'Neal, who was employed by Emery Federal Credit Union as a loan officer for approximately one year, claims that Emery allowed her and all its loan officers to work more than forty hours per workweek without paying them overtime compensation and failed to pay them the applicable minimum wage for all hours worked up to forty hours per workweek.

The Court denied Plaintiff's first motion to conditionally certify a plaintiff class of Emery loan officers pursuant to 29 U.S.C. §216(b).  Now before the Court is Plaintiff's second motion for conditional certification, Doc. 34.  Defendants oppose the motion.  For the following reasons, Plaintiff's motion is hereby GRANTED IN PART and DENIED IN PART.

**I.  BACKGROUND**

1

Plaintiff O'Neal filed her first motion for conditional class certification in February 2013. She sought certification of a plaintiff class defined as "[a]ll current and former loan officers working for Emery Federal Credit Union and/or Emery Financial Services, Inc. from [the date three years from the date the Court grants the motion for conditional certification] to the present." She asserted that all Emery loan officers[1] are subject to the same illegal pay policies, namely: (1) they are permitted to work more than forty hours per week to complete their job responsibilities but are denied overtime compensation, and (2) they are paid no more than twenty or thirty hours per week at the state's minimum wage, even if they work more than twenty or thirty hours.

The Court denied the motion after finding that O'Neal had failed to meet the lenient standard for conditional certification. *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2013 WL 4013167 (S.D. Ohio Aug. 6, 2013). O'Neal had supported her motion with three sworn statements: hers and those of opt-in plaintiffs Tim Mulvehill and Dan Mulvehill, also former Emery loan officers. O'Neal performed her work for Emery from her home in Lutz, Florida; Dan Mulvehill worked for Emery out of his home in Seattle, Washington; and Tim Mulvehill worked for Emery out of an office location and also out of his home in Seattle, Washington.

Nothing in the declarations submitted by the three Plaintiffs demonstrated that they had actual knowledge about the hours worked by or compensation paid to other Emery loan officers. Accordingly, the Court disregarded the statements these three plaintiffs made about other loan officers. *Id*. at *7. Additionally, though claiming that all Emery loan officers were required to

---

[1] Emery states, and Plaintiff does not dispute, that Emery employs approximately 376 loan officers, also called loan originators, in thirty-five states.

sign the same or similar employment agreement, only O'Neal and Tim Mulvehill had signed Loan Officer Agreements with Emery, and the two agreements were dissimilar with respect to the terms of compensation.  In short, the evidence put forth by O'Neal was insufficient to support an inference that Emery had a uniform policy with respect to loan officer compensation and hours worked.  Because O'Neal had failed to satisfy her burden of demonstrating that similarly situated employees existed, the court did not conditionally certify the class.  *Id*. at \*11.

O'Neal states that after the Court denied her motion for conditional certification, additional witnesses came forward who provided details regarding other Emery loan officers being subject to the same allegedly illegal pay plan.  O'Neal supports her second motion to conditionally certify a plaintiff class of Emery loan officers with this additional information, comprised of a revised statement by Tim Mulvehill (Doc. 35-2) and the sworn statements of three more former Emery loan officers: Carl Snyder (Doc. 35-4), Michael Pfeil (Doc. 35-5), and Daryl Kalb (Doc. 35-6).  Carl Snyder worked for Emery out of an office located in San Diego, California; Michael Pfeil and Daryl Kalb worked for Emery out of an office located in Bel Air, Maryland.  The motion is now ripe for this Court's consideration.

## II. ANALYSIS

Courts within the Sixth Circuit generally employ a two-tiered certification approach for deciding whether to conditionally certify a collective class.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583-85 (6th Cir. 2009).  The first, or "initial notice" stage, takes place early in the case, generally before discovery has taken place.  A court will conditionally certify a class if the plaintiff demonstrates by a "modest factual showing" that she is "similarly situated" to the employees she seeks to notify of the pending action.  *White v. MPW Indus. Servs., Inc.*, 236

F.R.D. 363, 367 (E.D. Tenn. 2006). If a plaintiff makes this showing and the court conditionally certifies the class, the plaintiff is permitted to solicit opt-in notices to potential plaintiffs. The second stage occurs after opt-in forms have been received and discovery has concluded. *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011).

### A. Conditional Certification

This case is in the first of stage of this certification process. For the Court to grant Plaintiff's second motion for conditional certification, O'Neal must provide evidence sufficient to support an inference that she and other Emery loan officers together were "victims of a common policy or plan that violated the law." *White*, 236 F.R.D. at 367; *see also O'Brien*, 575 F.3d at 583. She must do so without the benefit of discovery, as there has been no joint discovery in this case on the issue of whether similarly situated individuals exist.[2]

While the evidentiary threshold for demonstrating that similarly situated employees exist is not high at this initial stage, a plaintiff must demonstrate a factual nexus — that is, something more than "bare allegations" — to warrant conditional certification and the delivery of notice to potential class members. *Allen v. Payday Loan Store of Ind., Inc.*, 2:13CV262, 2013 WL 6237852, at *7 (N.D. Ind. Dec. 3, 2013). Allegations in declarations need not be "highly specific," and "it is not necessary for the declarants to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Noble v. Serco, Inc.*, No. 3:08-76-DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009). However, to warrant a

---

[2] When the parties are permitted to conduct some limited discovery to determine whether a class of similarly situated plaintiffs may exists, courts sometimes hold plaintiffs to a higher standard of proof. *See Creely*, 789 F. Supp. 2d at 823–24 (discussing cases). As there has been no such discovery in this case, the Court will apply the "modest factual showing" standard.

finding that similarly situated employees exist, a plaintiff's declaration must allege facts sufficient to support an inference that she has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours. *Id*. First-hand observations or conversations with co-workers may be sufficient to support an inference that a plaintiff has actual knowledge of company-wide employment practices. *See O'Neal*, 2013 WL 4013167, at *8 (citing cases).

The Court now must examine the new evidence submitted by O'Neal to determine whether she has succeeded in demonstrating by a modest factual showing that similarly situated employees exist. As an initial matter, the Court observes that although O'Neal provided the Court with the "sworn statements" of three new opt-in plaintiffs, it will not consider the statement of Daryl Kalb because it does not meet the statutory verification requirements.

Under 28 U.S.C. § 1746, "Unsworn declarations under penalty of perjury," wherever a matter is required or permitted to be supported, evidenced, or established in writing by a person, the matter may be supported by a signed and dated written statement that asserts the statements are true under penalty of perjury. In his statement, Daryl Kalb states "under oath and penalty of perjury" that the information therein is "true and correct." (Doc. 35-6 at Page ID 323.) However, Kalb did not date his statement as required by the statute. (*Id*. at Page ID 327.) This omission was noted by Defendants in their opposition memorandum, yet Plaintiff did not address the issue nor attempt to correct the omission. A district court does not abuse its discretion by refusing to consider as evidence unsworn statements that do not comply with the requirements of 28 U.S.C. § 1746. *Lauderdale v. Wells Fargo Home Mortg.*, —F. App'x—, 2014 WL 259919, at

5

*4 (6th Cir. Jan. 23, 2014).[3] The Court, therefore, will disregard Kalb's statement and determine whether the revised statement of Tim Mulvehill and the statements of new opt-in plaintiffs Carl Snyder and Michael Pfeil provide sufficient additional information from which the Court might conclude that the Plaintiffs are similarly situated to the other employees they seek to notify of this action.

Tim Milvehill states that he worked as an Emery loan officer and as a branch manager at an Emery office located in Bellevue, Washington, on and off from 2009 through August 2012. (Doc. 35-2 at Page ID 283.) He states that he worked with four to six other Emery loan officers at that location and that, while employed there, he spoke with the other loan officers both in his office and across the nation about how they were compensated. (*Id*.) Mulvehill claims that regardless of the number of hours he worked each week, Emery paid him no more than thirty hours per week at the state's minimum wage. (*Id*. at Page ID 284.) This statement is supported by Mulvehill's "Loan Officer Agreement," which is attached to his statement and which provides that in any month in which the loan officer earns a commission that is less than the state's minimum wage times thirty hours per week, the loan officer will be paid the minimum

---

[3] The *Lauderdale* case involved a district court's refusal to consider interrogatory answers that did not comply with 28 U.S.C. § 1746 as evidence in opposition to a motion for summary judgment. *Lauderdale,* 2014 WL 259919, at *3–4. Evidence submitted in opposition to summary judgment must be admissible at trial. *Id*. at *4 (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

The weight of authority in this judicial district holds that only admissible evidence may be considered in connection with a motion to certify a collective action under 29 U.S.C. § 216(b). *See Sisson v. OhioHealth Corp.*, No. 2:13-cv-517, 2013 WL 6049028 (S.D. Ohio Nov. 14, 2013) (Courts . . . have repeatedly held . . . that only admissible evidence may be considered in connection with a motion to certify a collective action under 29 U.S.C. § 216(b).") (citing *Harrison v. McDonald's Corp*. 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005)). The *Lauderdale* decision is therefore applicable to the instant conditional certification motion.

wage for thirty hours. (*Id*. at Page ID 292.) Mulvehill states, "[f]rom my observations and interactions with the other Loan Officers at my office, it is my understanding that the other Loan Officers at my office also executed similar agreements." (*Id*. at Page ID 284.) Mulvehill states he usually worked in excess of forty hours per week and observed other loan officers in his office work in excess of forty hours per week, but he was paid for no more than thirty hours per week and was not paid any premium for hours worked in excess of forty per week. (*Id*. at Page ID 284.)

Carl Snyder worked as a loan officer for Emery for approximately six months in 2012 out of an office in San Diego, California. (Doc. 35-4, at Page ID 301.) Snyder was one of four loan officers working out of that location. While employed by Emery, Snyder spoke with two other loan officers working in his office, Katy Kniest and Christopher Morehead, regarding the manner in which they were compensated. (*Id*.) From those conversations, he determined that the compensation plan that applied to him applied to the other loan officers in his office. Under his compensation plan, memorialized in a "Loan Officer Agreement" attached to his statement, Snyder was compensated in the amount of the state's minimum wage times twenty hours per week in any month in which he earned a commission less than the state's minimum wage times twenty hours per week. (*Id*. at Page ID 310.) He was so compensated even during those weeks where he performed work for Emery in excess of twenty hours per week. In fact, Snyder usually worked in excess of forty hours per workweek, and he observed other loan officers in his office working in excess of forty hours per workweek. (*Id*. at Page ID 302.)

Michael Pfeil worked as a loan officer for Emery from about September 2011 through January 2013 out of an office located in Bel Air, Maryland. (Doc. 35-5, at Page ID 316.) He

worked with six other Emery loan officers at that location. During his employment at that office, Pfeil spoke with all six of the loan officers at that location (Daryl Kalb, Chad Hiteshew, Mark Thoner, Tony Cardenas, Louis Sauer, and Greg Matters) regarding the manner in which they were compensated. From those conversations, he determined that his compensation plan applied to the other loan officers as well. (*Id*.) Pfeil stated that under his compensation plan, Emery paid him no more than twenty hours per week at the state's minimum wage. However, Pfeil usually worked in excess of forty hours per workweek. (*Id*. at Page ID 317.) Pfeil observed the other loan officers in his office work in excess of forty hours per week. (*Id*.) Pfeil states that he signed a Loan Officer Employment Agreement with Emery and that, from his observations and interactions with other loan officers at his office, the other loan officers executed the same agreement. The loan officer agreement attached as an exhibit to Pfeil's statement is not signed by him; it is signed by Daryl Kalb on behalf of Emery. Regardless, the Agreement specifies that the loan originator shall be paid a draw against commission earned in an amount equal to minimum wage for each hour worked up to twenty hours per week. (*Id*. at Page ID 322.)

Defendants counter these new declarations with those made by the vice president of Emery's mortgage division, four team managers, and four loan officers or loan originators (the terms are used interchangeably by Emery). (Docs. 46-1 through 46-9.) The gist of these declarations is that Emery loan officers' hours, compensation, and timekeeping requirements are not uniform. But at the preliminary certification stage, any conflicts and reasonable inferences have to be resolved in Plaintiff's favor. *See*, *e.g.*, *Burdine v. Covidien, Inc.*, No. 1:10-cv-194, 2011 WL 2976929, at *3-4 (E.D. Tenn. June 22, 2011) (declining to consider the merits of either

the claims or defenses when approving conditional certification); *see also Seger v. BRG Realty, LLC*, No. 1:10-cv-434, 2011 WL 2020722, at *3 (S.D. Ohio May 24, 2011).

The additional statements provided in support of Plaintiff's second motion for conditional certification include facts from which the Court can draw an inference that other Emery loan officers were not consistently paid minimum wage for all hours worked up to forty hours per week and that they sometimes worked more than forty hours a week without being paid overtime compensation. Tim Mulvehill, Carl Snyder, and Michael Pfeil's observations of, and interactions and conversations with, other Emery loan officers in their offices are sufficient to support the inference that Plaintiffs have actual knowledge that their experience was not unique. These three opt-in Plaintiffs worked in an office setting with other Emery employees performing the same or similar job duties for the employer and thus could observe the employment experience of their peers. Courts have found that when a plaintiff works amongst peers and can observe their employment experiences, it is reasonable to infer that plaintiff would have learned during the normal course of employment how the company operates, what company policies were, how many hours other employees worked, and how the company compensated other employees. *See Noble*, 2009 WL 3154252, at *3; *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, 1:10-cv-01155-JDB, 2011 WL 1256625, at *15–16 (W.D. Tenn. Mar. 31, 2011); *White*, 236 F.R.D. at 369. This type of testimonial evidence was lacking when Plaintiff filed her first motion for conditional certification.

With the additional statements from loan officers, O'Neal has made the "modest factual showing" necessary to satisfy the "similarly situated" requirement of § 216(b) at the conditional certification phase. Plaintiffs have presented evidence that loan officers working at a home

9

office in Florida (O'Neal), and working in offices in Washington (Mulvehill), California (Snyder), and Maryland (Pfeil) worked more than the number of hours specified in their loan officer agreements. Additionally, Emery loan officers working in offices in three different states observed their coworkers work more than forty hours a week. Finally, although not identical in their terms, all Emery loan officer employment agreements limit the loan officer's compensation to forty or fewer hours per workweek at minimum wage, regardless of the number of hours worked, if the earned commission is less than that amount. This constitutes evidence sufficient to create an inference that there are similarly situated loan officers nationwide.

While Plaintiff's showing that she is similarly situated to potential opt-in plaintiffs is not great, it is sufficient to satisfy the low standard applicable at this stage of the case. *See Noble*, 2009 WL 3154252, at *6; *see also McNelley v. ALDI, Inc.*, 1:09-CV-1868, 2009 WL 7630236, at *4 (N.D. Ohio Nov. 17, 2009) ("Plaintiff need only show that he is similarly situated to the class, which he has done."); *Lewis v. Huntington Nat. Bank*, 789 F. Supp. 2d 863, 867-68 (S.D. Ohio 2011) (identifying factors when considering conditional certification, such as "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; [and] whether evidence of a widespread discriminatory plan was submitted . . ."). Importantly, this conditional certification is not final and may be challenged at the second stage of certification where the "the court uses a higher standard to analyze the similarly situated issue." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299 JBC, 2007 WL 293865, at *5 (E.D. Ky. Jan. 26, 2007) (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000)).

For the foregoing reasons, the Court GRANTS the Plaintiffs' request for conditional certification under § 216(b) of the FLSA of a nationwide class of all current or former loan officers/loan originators employed by Emery for the prior three years.

### B. Judicial Notice

Plaintiff has proposed a written notice and opt-in form to be sent to potential class members to notify them of this lawsuit and invite them to join it as opt-in plaintiffs. Courts may facilitate notice to putative collective class members so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168–69 (1989). Accurate and timely notice concerning the pendency of the collective action promotes judicial economy because it discourages class members from filing numerous identical suits and instead allows them to pursue their claims in one case where the same issues of law and fact are already being addressed. *Id.* at 170.

Plaintiff's proposed notice prompted several objections from Defendants, and Defendants requested an opportunity to meet and confer with Plaintiff's counsel in order to attempt to resolve their objections. It is preferable that the parties agree to the form of notice, and accordingly the Court ORDERS the parties to meet and confer, through counsel, regarding the content and form of notice to be given to proposed class members and to submit, within fourteen days of the date of this Order, a joint proposed judicial notice and a proposed opt-in consent form. Any specific language that remains in dispute shall be noted and will be resolved by the Court.

The Court has noticed certain deficiencies in the notice already proposed by Plaintiff that counsel should address when drafting a joint proposed notice. First, the proposed notice and consent form should clarify that the class includes current and former "loan officers" and "loan originators" for Emery, as Emery uses those terms interchangeably and some notice recipients may identify with the term loan originator but not loan officer. Second, the joint proposed notice should accurately describe the claims raised in this action.[4] Third, the proposed notice and opt-in form should state that a person's eligibility to participate in the lawsuit depends on whether they actually worked over forty hours during any workweek without receiving overtime pay and/or were not paid minimum wage for all hours worked.

**C. Discovery**

Plaintiff asks this Court to order Defendants to provide her with a list of all persons who worked for Defendants as a loan officer over the prior three years along with their last known addresses, phone numbers, dates of employment, and email addresses so that she can contact these individuals about this lawsuit. Plaintiff additionally asks this Court to order Defendants to provide the social security numbers (under order of confidentiality) for all class members whose mailed notices are returned so Plaintiff can locate a viable mailing address.

Defendants object to disclosing phone numbers or social security numbers of any potential plaintiffs, asserting their privacy interests. Defendants also object to providing their current or former loan officers' dates of employment, stating that there is no apparent reason to provide that information if they are providing the requested employee contact information for

---

[4] The introductory paragraph of the notice proposed by Plaintiff fails to mention that this lawsuit includes a claim for minimum wage compensation.

those employed in the appropriate limitations period. Finally, Defendants object to providing email addresses for its current and former loan officers, asserting that like phone numbers and social security numbers, email addresses are "inherently private information" of employees.

The Court will require Defendants to provide the full name, last known addresses, and dates of employment of all current and former loan officers/loan originators employed by Emery over the past three years. This information is likely to enable Plaintiff to reach the majority of potential class members. However, individuals who are no longer employed by Emery may have relocated, and their addresses on record with Defendants may not be current. Accordingly, Defendants additionally shall provide Plaintiff with the last known email address of loan officers who are no longer employed by Defendants to ensure that former employees receive at least one copy of the notice. *See Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 215 (S.D. Ohio 2011) (in FLSA case, permitting transmission of notice by mail and additionally by email to former employees).

Because Plaintiffs have made no showing that the last known address and/or email address of potential class members will be insufficient to provide reasonable notice to the class, Defendants need not produce to Plaintiff any of its current or former loan officers' social security numbers or telephone numbers. *See id.* (denying plaintiff's request in a FLSA case for potential class members' social security numbers and telephone numbers); *Wolfram v. PHH Corp.*, No. 1:12-cv-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) (same).

Permitting transmission of notice by mail to all potential class members and additionally by email to former employees safeguards the privacy of individuals not currently a party to the

13

case and helps ensure all potential plaintiffs receive notice of their right to join the lawsuit. All employee information shall be used solely for the purpose of sending notice in this litigation.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Second Motion for Conditional Certification (Doc. 34) is GRANTED IN PART and DENIED IN PART. The Court GRANTS conditional certification under § 216(b) of the FLSA of a class of current and former loan officers/loan originators employed by Emery during the preceding three-year period. The Court appoints Plaintiff Linda O'Neal to act as class representative and appoints Brendan J. Donelon of the law offices of Donelon, P.C. and Deborah R. Grayson of the law offices of Meizlish & Grayson, Inc. to act as lead counsel.

The Court DENIES Plaintiff's motion to the extent it seeks approval of her proposed notice and opt-in forms and authorization to send them to potential class members. Within fourteen days of the date of this Order, counsel shall submit a joint draft of a proposed notice to potential plaintiffs about this collective action and a proposed opt-in consent form. The Court will resolve any disputes noted in the draft in an order granting final approval of the notice and opt-in consent form.

The Court also DENIES Plaintiff's motion to the extent it seeks discovery of potential class members' telephone and social security numbers. The Court directs Defendants, within fourteen days of the date of this Court's order granting final approval of the notice and opt-in consent form, to provide Plaintiff's counsel with the full name, last known addresses, and dates of employment of all current and former loan officers/loan originators employed by Emery over

the past three years as well as the last known email addresses of former loan officers/loan originators employed by Emery during that time frame.

       IT IS SO ORDERED.

                                                        ___s/Susan J. Dlott_____
                                                        Chief Judge Susan J. Dlott
                                                        United States District Court