IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **LINDA O'NEAL**, et al., | : | |
| | : | Case No. 1:13CV22 |
| Plaintiffs, | : | |
| | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING PLAINTIFF |
| **EMERY FEDERAL CREDIT UNION**, | : | MCNEIL'S MOTION FOR |
| et al., | : | CONDITIONAL CERTIFICATION |
| | : | |
| Defendants. | : | |
| | : | |

This matter is before the Court on a Motion for Conditional Certification under § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, filed by Plaintiff BettyJean McNeil on behalf of herself and all those similarly situated. (Doc. 91.) McNeil, who worked as a loan processor for Emery Federal Credit Union for approximately three years, now moves the Court to conditionally certify a plaintiff class pursuant to 29 U.S.C. § 216(b) consisting of all employees who performed as loan processors for Defendants Emery Federal Credit Union and Emery Financial Services, Inc. (collectively, "Emery") from three years and sixty-one days from the date of an order granting her motion. Defendants oppose McNeil's motion. For the following reasons, McNeil's motion will be DENIED.

I.   **BACKGROUND**

  A.   **Procedural History**

This case was originally filed nearly two years ago by Plaintiff Linda O'Neal on behalf of herself and a class of similarly situated loan officers employed by Emery. O'Neal, who was employed by Emery Federal Credit Union as a loan officer for approximately one year, claims that Emery allowed her and all of its loan officers to work more than forty hours per workweek

without paying them overtime compensation and failed to pay them the applicable minimum wage for all hours worked up to forty hours per workweek. On March 4, 2014, after denying O'Neal's first motion for conditional certification, the Court granted O'Neal's second motion for conditional certification under § 216(b) of the FLSA of a class of current and former loan officers/loan originators employed by Emery during the preceding three-year period. *O'Neal v. Emery Fed. Credit Union*, No. 1:13-cv-22, 2014 WL 842948, at *7 (S.D. Ohio Mar. 4, 2014).

Following conditional certification of the loan officer class, on September 22, 2014, the Court granted O'Neal's Motion for Leave to Amend the Complaint to include McNeil as a named plaintiff and to add an FLSA collective class claim on behalf of loan processors similarly situated to McNeil. McNeil asserts that Defendants treated her and similarly situated loan processors as exempt from overtime and that they were paid a "set amount of compensation each week or set piece-rate dollar amount for each loan file worked on, with some also receiving nondiscretionary bonus pay." (Second Amended Compl., Doc. 90 at PageID 775, ¶ 25.) McNeil alleges Defendants routinely "suffered and permitted" her and others similarly situated to work more than forty hours per week, failed to pay overtime compensation or minimum wages due, and failed to keep accurate records of hours worked. (*Id*. at PageID 776, ¶ 28.)

On October 3, 2014, McNeil filed the Motion for Conditional Certification presently before the Court. McNeil requests the Court issue an order granting conditional class certification pursuant to § 216(b) of the FLSA for "all employees who performed as Loan Processors for the Defendants [for] three years and sixty-one days from the Court's order on this Motion." (Doc. 91 at PageID 784–85.) If her motion is granted, McNeil requests the Court to order Defendants to provide her a list in electronic format of the names, addresses, phone numbers, dates of employment, and email addresses of the members of the conditionally-

certified class. For those class members whose mailed notices are returned, McNeil requests the Court to order the Defendants to provide the last four digits of those members' social security numbers to allow her to locate viable mailing addresses. Finally, McNeil seeks approval of her proposed notice of claims and opt-in form and authorization for her to send the approved notice and form to the loan processor class.

### B. Loan Processor Class

Plaintiff McNeil asserts that she has brought forth sufficient evidence to demonstrate that the same illegal pay policy was applied to Emery's loan processors, namely, that no loan processor was paid for overtime for hours worked in excess of forty per workweek. In support of her motion, McNeil has submitted her own declaration, nine declarations made by opt-in Plaintiffs,[1] and the Emery loan processor job description.

In her declaration, McNeil states that she worked as a loan processor for Emery from mid-2010 through on or about June 17, 2013 out of an office in Irvine, California. (McNeil Decl., Doc. 92-1 at PageID 800, ¶¶ 1–2.) McNeil's primary job duties included collecting and organizing all the necessary paperwork from Emery's clients and its loan officers in order to process mortgage loan applications. (*Id*. at PageID 800, ¶ 5.) Under Emery's compensation plan for her, Emery paid McNeil a set amount of $375 per file that had a loan that closed. (*Id*. at PageID 800, ¶ 3.) McNeil was not required by Emery to report her hours worked, and her pay was not based on hours worked. (*Id*.) She asserts that under her pay plan, "we" were not paid any overtime for hours worked in excess of forty hours per week, and she usually worked on average fifty hours per week. (*Id*. at PageID 800, ¶ 4.)

---

[1] The Court refers to those individuals who have filed a "Consent to Join" the instant litigation as "opt-in Plaintiffs" for purposes of its Order.

3

McNeil's motion is supported by nine other declarations made by loan processor opt-in Plaintiffs Kristen Jourdan, Amy Kalb, Chris Miller, Cristy Hansen, Dominic Notaro, Lisa Deardorff, Amanda Graham, Ruth Vigna, and Lovie Johnson.  Each opt-in Plaintiff asserts that he or she was employed as a loan processor for Emery and performed the primary duties of collecting and organizing necessary paperwork from Emery's clients and its loan officers in order to process mortgage loan applications.  (Declarations, Doc. 92-1 at PageID 802, 804, 806, 808, 810, 812, 814, 816, 818.)  The opt-in Plaintiffs state they were not required to report hours worked, their pay was not based on hours worked, and they were not paid for any overtime worked in excess of forty hours per workweek.  (*Id*.)  Each opt-in Plaintiff also asserts he or she usually worked greater than forty hours per workweek without overtime compensation, although the usual amounts of hours worked ranged from forty-five to fifty-five hours per workweek, depending upon the individual.  (*Id*.)  In addition, the opt-in Plaintiffs claim there are "numerous" other loan processors working for Emery nationwide.  (*Id*.)

Most of the opt-in Plaintiffs worked in separate cities, the majority of which are in Maryland.  Opt-in Plaintiffs Jourdan, Hansen, and Notaro worked in an office in Forest Hill, Maryland,[2] although it is unclear whether these individuals worked at the same office.  (Jourdan Decl., Doc. 92-1 at PageID 802; Hansen Decl., Doc. 92-1 at PageID 808; Notaro Decl., Doc 92-1 at PageID 810.)  Three opt-in Plaintiffs worked from offices in other cities in Maryland.  (Kalb Decl., Doc. 92-1 at PageID 804; Miller Decl., Doc. 92-1 at PageID 806; Deardorff Decl., Doc. 92-1 at PageID812.)  Finally, three opt-in Plaintiffs worked in unique states: Graham worked out of an office in in Highlands Ranch, Colorado, Vigna from an office in Valparaiso, Indiana, and

---

[2] The city of "Forrest Hill, Maryland" is spelled slightly differently in each declarant's sworn statement, but the Court infers that this is the same city.

4

Johnson from an office in Norcross, Georgia. (Graham Decl., Doc. 92-1 at PageID 814; Vigna Decl., Doc. 92-1 at PageID 816; Johnson Decl., Doc. 92-1 at PageID 818.)

Methods of compensation varied widely among the opt-in Plaintiffs, the differences as distinct as some opt-in Plaintiffs being paid a salary and some being paid an hourly wage. To illustrate, Kalb was paid a salary (the amount of which was not disclosed), whereas Miller was paid a salary of $2,500 per month along with a nondiscretionary bonus of $50 to $140 per loan based on the loans closed. (Kalb Decl., Doc. 92-1 at PageID 804; Miller Decl., Doc. 92-1 at PageID 806.) Deardorff was paid an annual salary of $32,500 per year with a nondiscretionary bonus of $150 per loan based on loans closed. (Deardorff Decl., Doc. 92-1 at PageID 812.)

In contrast, Graham was paid minimum wage for forty hours per week, and anything paid was deducted from bonuses paid on loan files closed. (Graham Decl., Doc. 92-1 at PageID 816.) Vigna was paid a set dollar amount for every file she worked on that was closed, and if none were closed for a week, she was paid for twenty hours of work at minimum wage regardless of the number of hours worked. (Vigna Decl., Doc. 92-1 at PageID 814.) At the end of her employment, however, Vigna was paid $400 per loan closed. (*Id.*) Johnson, on the other hand, was first paid a set dollar amount for forty hours per week regardless of hours worked. (Johnson Decl., Doc. 92-1 at PageID 818.) In February 2013, Emery stated she "would report" weekly hours worked, but could not report any more than forty hours regardless of the number of hours worked. (*Id.*)

The opt-in Plaintiffs who worked in the same city of Forrest Hill, Maryland were also compensated differently. Jourdan, who worked in Forrest Hill, Maryland from April 2012 through on or about September 2013, first was paid a salary not based on hours worked along with a commission for loans closed. (Jourdan Decl., Doc. 92-1 at PageID 802.) Later, she was

5

paid $350 per loan closed. (*Id*.) Hansen, who worked in Forrest Hill, Maryland from February 2012 through on or about April 2014, was paid $8.25 per hour for twenty hours a week, with a nondiscretionary bonus based on loans closed. (Hansen Decl., Doc. 92-1 at PageID 808.) Hansen also asserts that there would be workweeks for which she was not paid minimum wage for all hours worked up to forty hours. (*Id*.) Lastly, Notaro, who worked in Forrest Hill, Maryland from October 2012 through on or about April 2014, was paid $9.00 per hour for twenty hours per week along with a nondiscretionary bonus based on loans closed. (Notaro Decl., Doc. 92-1 at PageID 810.)

In addition to the ten declarations, McNeil also relies upon the Emery loan processor job description, which classifies the position as non-exempt and states the weekly hours for the position vary. (Loan Processor Job Description, Doc. 100 at PageID 880–81.) The job description identifies principle duties and responsibilities of the position, including reviewing and verifying borrower documentation. (*Id*.) In addition, the job description identifies the person to whom the employee reports to as the "Team Mgr, National Proc Mgr." (*Id*.)

Defendants responded to McNeil's Motion for Conditional Certification by filing an opposition memorandum and the affidavit of Alex Fernandez, who is currently employed by Emery as its national loan processing manager and has held the role since 2009. (Fernandez Decl., Doc. 99-1 at PageID 857–58.) Fernandez oversaw the work of all loan processors employed by Emery prior to its mortgage division shutdown on March 7, 2014. (*Id*. at PageID 857, ¶ 5.) All of Emery's loan processors, except for a small group of corporate loan processors, worked on teams led by team managers. (*Id*. at PageID 857, ¶ 6.) Each team manager determined the hours of work for the loan processors on their team, methods for recording and verifying hours the loan processors worked, working arrangements (such as whether one could

work from home or from an office), and compensation. (*Id.* at PageID 857–58, ¶ 6.) Because Emery did not have a rigid policy or practice regarding compensation arrangements for its loan processors, compensation practices varied. (*Id.* at PageID 857–58, ¶¶ 6, 8)

Fernandez was told by Emery's human resources employees that loan processors were to be paid overtime compensation for hours worked over forty in a week. (*Id*. at PageID 858, ¶ 8.) As part of their job duties, loan processors generally would not have needed to observe or interact with team managers or loan processors on other teams, and would not have reason to know how members of other teams operate or are compensated. (*Id*. at PageID 858, ¶ 9.)

## II. ANALYSIS

### A. Conditional Certification

Although the FLSA does not prescribe a procedure for instituting and managing a collective action, courts within the Sixth Circuit generally employ a two-stage process in deciding whether to certify a collective class. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). The first stage, conditional certification, often occurs before discovery has begun. *O'Neal v. Emery Fed. Credit Union,* No., No. 1:13-cv-22, 2014 WL 842948, at *2 (S.D. Ohio Mar. 4, 2014). At this stage, a court will conditionally certify a class if the plaintiff demonstrates by a "modest factual showing" that she is "similarly situated" to the employees she seeks to notify of the pending action. *Id*. (citing *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006)). "[C]ourts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Memorial Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012) (citing *Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).)

7

Due to this lenient standard, "district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues when deciding whether to conditionally certify a class." *O'Neal v. Emery Federal Credit Union,* No. 1:13-cv-22, 2013 WL 4013167, at *5 (S.D. Ohio Aug. 6, 2013). Nonetheless, "the court should exercise caution in granting conditional certification, because the Sixth Circuit Appellate Court has held 'that a conditional order approving notice to prospective co-plaintiffs in a suit under § 216(b) is not appealable.'" *Id*. (citing *Snide v. Discount Drug Mart,* Inc., No. 1:11-cv-244, 2011 WL 5434016, at *4 (N.D. Ohio Oct. 7, 2011)). If a plaintiff meets her evidentiary burden and the class is conditionally certified, the plaintiff is permitted to solicit opt-in notices to potential plaintiffs, and discovery proceeds. *Id.*

At the second stage of the proceedings, which occurs after all class plaintiffs have opted-in and after all or most of discovery has been conducted, the defendant may file a motion to decertify the plaintiff class. *Id.* At this stage, the district court will employ a stricter standard to determine whether the plaintiff class members are similarly situated. *Id.* (citing *Baptist Mem'l,* 699 F.3d at 877).

### B. Similarly Situated Employees

This case is currently at the first stage of the two-step process for determining whether to certify the loan processor class. The Court must now examine the evidence submitted by McNeil to determine whether she has succeeded in demonstrating by a modest factual showing that similarly situated employees exist. To meet her evidentiary burden at the first stage of the certification process, McNeil must provide the Court with sufficient evidence to support an

inference that she and the proposed class of loan processors were "victims of a common policy or plan that violated the law." *O'Neal*, 2014 WL 842948 at *2 (citing *White*, 236 F.R.D. at 367).

Plaintiffs can demonstrate they are similarly situated by showing that "their claims are unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien,* 575 F.3d at 585. "While the evidentiary threshold for demonstrating that similarly situated employees exist is not high at this initial stage, a plaintiff must demonstrate a factual nexus — that is, something more than 'bare allegations' — to warrant conditional certification and the delivery of notice to potential class members." *Id*. (citing *Allen v. Payday Loan Store of Ind., Inc.*, 2:13CV262, 2013 WL 6237852, at *7 (N.D. Ind. Dec. 3, 2013)). "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Noble v. Serco, Inc*., No. 3:08-76-DCR, 2009 WL 3154252, at *3 (E.D. Ky. Sept. 28, 2009) (citing *Murton v. Measurecomp, LLC,* No. 1:07CV3127, 2008 U.S. Dist. LEXIS 108060, at * 11 (N.D. Ohio June 9, 2008)).

Although McNeil and the nine opt-in Plaintiffs' job duties are similar and all assert they were not paid overtime wages for hours worked in excess of forty per week, McNeil's evidentiary showing is insufficient to meet her burden in two respects. First, McNeil has not come forward with sufficient evidence that she and all Emery loan processors were compensated according to the same compensation plan. Second, McNeil has not demonstrated that the loan processor class was subject to the same, company-wide, FLSA-violating policy.

### 1. Compensation

The Court will first consider the issue of whether the proposed loan processor class was subject to the same compensation structure. McNeil argues that Emery loan processors were

9

paid a "set" amount of compensation, which demonstrates they are similarly situated. She also argues that variation in damages is a question of manageability of a class, which is a consideration for the second step of the certification process.

The evidence reflects that compensation methods varied widely among the small group of loan processor opt-in Plaintiffs and mirror Emery's de-centralized management of this position. Each team manager who supervised a loan processor determined that employee's hours of work, how hours were recorded and verified, and the compensation methods for that particular employee. (Fernandez Decl., Doc. 99-1, at PageID 857–858.) Of the ten declarations submitted in support of McNeil's motion, compensation methods varied widely and included piece-rate only payment, salary payment, and hourly payment.[3] A loan processor's method of compensation was also subject to change. For example, Vigna's compensation shifted from a set dollar amount per file closed, and if none were closed in one week, payment for twenty hours of work at minimum wage, to a flat rate of $400 per loan closed. (Doc. 92-1 at PageID 814.) Loan processors were also compensated for different hourly schedules: Vigna appears to have been hired to work twenty hours per week, whereas Graham was paid minimum wage for forty hours per week. (*Id*. at PageID 814, 816.)

Although courts in this district have approved conditional certification for a class of plaintiffs where the compensation policy or structure was uniform, such as when this court conditionally certified the loan officer class in *O'Neal*, 2014 WL 842948 at *5, McNeil has not come forward with evidence of a uniform compensation structure for the loan processor class. *Compare Crowley v. Paint & Body Experts of Slidell, Inc.,* No. 14-172, 2014 U.S. Dist. LEXIS

---

[3] Although Plaintiffs have not raised the argument of misclassification because Defendants do not dispute the loan processor job is classified as non-exempt, the proposed class certainly raises concerns about classifying a mix of salaried and hourly workers as similarly situated.

75472, at *8 (E.D. La. June 3, 2014) (finding that plaintiffs failed to put forth substantial allegations that the putative class members were victims of a single decision, policy, or plan where they worked very different hours, were paid at dissimilar rates, received overtime pay in different manners, and where allegations covered different time periods) *with Wolfram v. PHH Corp.,* No. 1:12-cv-599, 2012 WL 6676778, at *2 (S.D. Ohio Dec. 21, 2012) (certifying class where plaintiffs had the same job title, position and primary duties, were classified as exempt, were subject to the same compensation method, and routinely worked over forty hours per week without overtime pay); *Heibel v. U.S. Bank Nat. Ass'n*, No. 2:11-cv-593, 2012 WL 4463771, at *5 (S.D. Ohio Sept. 27, 2012) (granting conditional certification where plaintiffs produced sufficient evidence suggesting they generally performed the same basic duties and were compensated in the same manner during the period in question); *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (granting conditional certification where the class members performed the same job functions and were compensated in accordance with one of two payment plans, both of which implemented the same system for commissions). The Court finds that the wide variety of compensation methods precludes a finding that the loan processor class is similarly situated.

    **2.    Common Policy or Plan**

Second, McNeil has not come forward with sufficient evidence to establish that the members of the proposed loan processor class were "victims of a common policy or plan that violated the law." *O'Neal*, 2014 WL 842948 at *2 (citing *White*, 236 F.R.D. at 367). Plaintiffs whose declarations contain facts that support an inference that they have actual knowledge of company-wide employment practices typically succeed in obtaining conditional certification. *O'Neal*, 2013 WL 4013167, at *8. McNeil asks the Court to infer from the declarations made by

11

her and the other opt-in Plaintiffs that Emery has a policy that loan processors were allowed to work more than forty hours per week to complete their job duties without being paid overtime compensation.

The Court is unable to infer such a policy existed, as none of the opt-in Plaintiffs' statements demonstrate they have actual knowledge that their experience was not unique. *See O'Neal*, 2013 WL 4013167 at *11. As the Court articulated in denying Plaintiff O'Neal's first motion for conditional certification, the sworn statements of opt-in Plaintiffs must include some statement from which the Court can infer they have actual knowledge their experiences were not unique. *Id*. at *9. In denying O'Neal's first motion for conditional certification of a loan officer class, the Court found three sworn statements and two loan officer agreements with dissimilar compensation terms were insufficient to support an inference that Emery had a uniform policy with respect to loan officer compensation and hours worked. *Id*. at *11.

In contrast, when O'Neal came forward with additional evidence in support of her second motion for conditional certification, the Court found O'Neal met her evidentiary burden. *O'Neal*, 2014 WL 842948 at *5. O'Neal supported her second motion with three new declarations, which included "observations of, and interactions and conversations with, other Emery loan officers in their offices" to support the inference that the opt-in loan officer Plaintiffs had actual knowledge their experiences were not unique. *Id*. The additional statements included facts from which the Court could draw an inference that other Emery loan officers were not consistently paid minimum wage for all hours worked up to forty hours per week, and that they sometimes worked more than forty hours per week without being paid overtime compensation. *Id*. The opt-in loan officer Plaintiffs also came forward with evidence that loan officers worked more than the hours specified in Loan Officer Agreements and that the Agreements limit the loan

12

officer's compensation to forty or fewer hours per workweek at minimum wage, regardless of the hours worked, if the earned commission is less than that amount. *Id*. While O'Neal's showing was not great, the evidence was sufficient to create an inference that there were similarly situated loan officers nationwide. *Id*.

The evidentiary showing in support of Plaintiff McNeil's motion for conditional certification of the loan processor class does not include evidence from which the Court can infer the opt-in Plaintiffs have actual knowledge their experiences were not unique. As discussed *supra*, it is undisputed that management of the loan processor position was decentralized and compensation practices varied widely. Even the opt-in Plaintiffs who worked in the same city of Forest Hill, Maryland fail to demonstrate that they worked in the same office, interacted with one another, or were aware of the compensation practices in their office. (*See* Declarations, Doc. 92-1 at PageID 802, 808, 810.) None of the opt-in Plaintiffs attest to personally observing any other loan processor work more than forty hours per week or discussing his or her hours of work or compensation with other loan processors within their office or in other offices. Rather, Defendants assert and it remains undisputed that loan processors would have no reason to interact with other loan processors or have knowledge of other loan processors' compensation or hours worked. The complaint is also not sufficiently detailed with respect to the alleged statutory violation that the Court can infer a uniform policy with respect to uncompensated hours worked by loan processors. Thus, it is unreasonable to infer that McNeil and the opt-in Plaintiffs would have learned during the normal course of employment how the company operates and what the company policies were with respect to how loan processors, nationwide, were compensated. For these reasons, McNeil has failed to provide support for her allegations that

Defendants had a pay policy that resulted in the denial of overtime pay to its loan processors. *See O'Neal*, 2013 WL 4013167 at *9.

The Court is also unable to infer from the opt-in Plaintiffs' declarations that there was any knowledge on the part of Emery team managers about the opt-in Plaintiffs or other loan processors working more than forty hours per week or being instructed to do so to establish such a policy existed. Plaintiffs' declarations do not include any statement that management was aware of or had knowledge of loan processors' off-the-clock activities. This factor was of "key significance" in *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012). There, the district court denied conditional certification where managers had little or no knowledge of subordinates' alleged off-the-clock work activities, and where there was no evidence managers acted uniformly nationwide in failing to follow written overtime policies. *Id.*; *see Adair v. Wisconsin Bell, Inc.,* No. 08-C-280, 2008 WL 4224360, at *7 (W.D. Wis. Jan. 25, 2013) (denying conditional certification where plaintiffs' statement did not provide factual support for the conclusion that the employer was aware of and permitted its employees to perform work outside of their job without pay on a widespread basis.) Although the opt-in Plaintiffs assert they had a practice of working more than forty hours per week, the Court cannot infer that this was a common policy attributable to their employer.[4]

---

[4] Johnson's declaration included a statement that "[i]n February 2013, Emery stated we would report our weekly hours worked, but we could not report any more than 40 hours regardless of the number of hours worked." (Doc. 92-1 at PageID 818) Even if this statement could be construed to infer knowledge on the part of Emery management of her off-the-clock activities, no other opt-in Plaintiff stated that he or she was directed to not properly record hours worked. Thus, standing alone, Johnson's declaration is insufficient to meet the evidentiary burden for conditional certification. *See Adair,* 2008 WL 4224360 at *7 ("Alleged FLSA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment.")

Despite the fact that McNeil need only make a modest factual showing to satisfy the similarly situated requirement of § 216(b) at the conditional certification phase, she has not done so.  Because McNeil has not made the showing required for conditional class certification under 29 U.S.C. § 216(b), the Court need not consider her proposed notice to collective class members.

### III. CONCLUSION

Although the Court has found the loan processors are not similarly situated to advance their claims in this litigation, they are not precluded from attempting to form a new or different class in another lawsuit.  This case is now at the stage where the parties should proceed with the previously conditionally-certified loan officer class.

For the foregoing reasons, Plaintiff McNeil's Motion for Conditional Certification (Doc. 91) is DENIED.

IT IS SO ORDERED.

S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court